IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMILLE HARRIS,<br><br>  Plaintiff,<br><br>  v.<br><br>IRIS MARTINEZ, Clerk of the Circuit Court of Cook County, in her official capacity,<br><br>  Defendant. | No. 22-cv-00373<br><br>Judge John F. Kness |

**MEMORANDUM OPINION & ORDER**

  Plaintiff Camille Harris filed this lawsuit against her employer, Defendant Iris Martinez, in her official capacity as the Clerk of the Circuit Court of Cook County Illinois. Plaintiff brings claims for discrimination and retaliation under the Americans with Disabilities Act because Defendant allegedly delayed Plaintiff's return from short-term disability leave. Defendant moves to dismiss both claims, arguing that sovereign immunity bars the lawsuit and that Plaintiff's Complaint fails to state a claim. For the following reasons, Defendant's motion (Dkt. 10) is denied.

**I. BACKGROUND**

  Plaintiff Camille Harris is a manager in the criminal department of the Office of the Clerk of the Circuit Court of Cook County Illinois (the "Circuit Court"). (Dkt. 1 ¶ 9.) Defendant Iris Martinez is the Clerk of the Circuit Court and is Plaintiff's employer. (*Id.* ¶ 4.) On April 8, 2021, Plaintiff had foot surgery and was approved by

Defendant to take short-term disability leave to recover until July 12, 2021. (*Id.* ¶¶ 12–13, 56, 76.) On July 8, 2021, Plaintiff's surgeon provided Defendant a note that Plaintiff was cleared to return to work with restrictions on July 12, 2021. (*Id.* ¶¶ 14, 57.) On July 12, Defendant's Human Resources Director, Beatrice Terrazas, emailed Plaintiff a Return-to-Work form that Plaintiff's doctor needed to sign. (*Id.* ¶ 16.) Plaintiff's doctor emailed Terrazas a signed copy of the Return-to-Work form that same day. (*Id.* ¶ 17.) Defendant's Chief of HR, Aquila Willis, emailed one of Plaintiff's supervisors, Carmen Navarro-Gercone, asking her to review Plaintiff's medical restrictions and to approve or deny Plaintiff's request to return to work. (*Id.* ¶ 18.) Later that day, July 12, 2021, Plaintiff received an email stating that she was approved to return to work. (*Id.* ¶ 19.)

Despite receiving approval to return on July 12, Plaintiff did not return to work. Instead, for reasons that are unclear from the Complaint, Plaintiff tried to clarify the status of her reinstatement. Plaintiff emailed Terraza and Willis once a day from July 13 to July 16 inquiring about the status of her return. (*Id.* ¶¶ 21–25.) Terraza responded to Plaintiff on July 16 and said that the office was still reviewing Plaintiff's medical restrictions and would contact her by the end of the day. (*Id.* ¶ 26.) No one, however, contacted Plaintiff on July 16, 2021. (*Id.* ¶ 27.) Plaintiff emailed Terrazas and Willis five more times between July 19, 2021 and August 2, 2011. (*Id.* ¶¶ 28–34.) Maureen O'Donnell, an Associate Clerk, replied on August 2, 2021 that Virginia Reyes would contact Plaintiff the next day, but Plaintiff did not hear from Reyes or anyone else in Defendant's office on August 3, 2021. (*Id.* ¶¶ 35–36.)

2

Finally, on August 11, 2021, Plaintiff received a phone call from Russel Ermon, Defendant's Personnel Services Manager. (*Id.* ¶ 37.) Because Plaintiff's medical restrictions were set to terminate on August 16, 2021, Ermon requested that Plaintiff be reevaluated by her doctor and execute another Return-to-Work form indicating that Plaintiff had no medical restrictions. (*Id.* ¶ 38.) Plaintiff was reevaluated by her doctor on August 17, 2021 and emailed Defendant a new Return-to-Work form on August 19, 2021; that form stated that Plaintiff could return to work without medical restrictions. (*Id.* ¶ 39–40.) Plaintiff was finally advised on August 24, 2021 that she was cleared to work, and Plaintiff returned to work that same day. (*Id.* ¶¶ 46–47, 68–69.)

On January 21, 2022, Plaintiff filed a two-count complaint against Defendant under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq*. In Count I, Plaintiff alleges that Defendant discriminated against Plaintiff because of her disability by delaying her return to work from July 12, 2021 until August 24, 2021, thus causing a loss of pay and benefits in violation of 42 U.S.C. § 12112(a). (Dkt. 1 ¶¶48–72.) Count II alleges that Defendant delayed Plaintiff's return to work as retaliation for Plaintiff previously filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 12, 2021 in violation of 42 U.S.C. § 12203(a). (*Id.* ¶¶ 73–80.)

Defendant has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss both counts for failure to state a claim. (Dkt. 10.) Defendant contends that Plaintiff fails to allege sufficient facts to state a claim for discrimination

3

and retaliation. (Dkt. 10, at 3–5.) Defendant also argues that the complaint should be dismissed for lack of jurisdiction because sovereign immunity bars Plaintiff's suit against Defendant, a state official. (Dkt. 16, at 2.) Because Defendant raised the sovereign immunity argument in her reply brief, the Court allowed Plaintiff to file a surresponse. Plaintiff argues in her surresponse that Congress abrogated Illinois's sovereign immunity via the ADA.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

### A. Sovereign Immunity

The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Although the text of the Eleventh Amendment does not explicitly "bar suits against a State by its own citizens," the Supreme Court "has consistently held" that a state is "immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Driftless Area Land Conserv. v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). State sovereign immunity extends to "state agencies, or state officials acting in their official capacities." *See Council 31 of Am. Fed. of State, County, and Municipal Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). Defendant, the Clerk of the Circuit Court, is an Illinois state official. *Drury v. McLean Cnty.*, 433 N.E.2d 666, 669 (Ill. 1982) ("We conclude that the clerk of the circuit court is a nonjudicial member of the judicial branch of State government and not a county officer."); *Bolden v. Westamerica Mortg. Co.*, 1998 WL 704165, at *3 (N.D. Ill. Sept. 29, 1998) ("Under Illinois law, the Clerk of the Circuit Court of Cook County is a state, not a county, official.").

Defendant moves to dismiss Plaintiff's complaint for lack of jurisdiction based on sovereign immunity. Sovereign immunity, however, is not a matter of jurisdiction; that is, the authority of a tribunal to decide a case. *Meyers v. Oneida Tribe of Indians*

5

*of Wis.*, 836 F.3d 818, 822 (7th Cir. 2016) ("[T]his circuit has clearly held that the question of sovereign immunity is not a jurisdictional one."). It is, instead, a defense to a lawsuit. In view of this rule, the Court construes Defendant's motion to dismiss as asserting an argument under Rule 12(b)(6) that Plaintiff has failed to state a viable claim. *See Freeman v. Univ. of Ill. at Chicago*, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018) (A "motion to dismiss based on sovereign immunity should be brought pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).").

There are two exceptions to state sovereign immunity: (1) a state may waive immunity by consenting to suit in federal court; or (2) Congress, by statute, may abrogate a state's immunity via its enforcement powers under the Fourteenth Amendment. *See Miraki v. Chicago State Univ.*, 259 F. Supp. 2d 727, 730 (N.D. Ill. 2003). Plaintiff argues that Congress, through the ADA, has abrogated Illinois's sovereign immunity. But the Court need not reach this argument (which is likely without merit)[1] because Illinois has clearly waived its immunity for ADA claims.[2]

---

[1] Plaintiff asserts a discrimination claim under Title I of the ADA and a retaliation claim under Title V of the ADA that is premised upon the same Title I violation. States have sovereign immunity from discrimination claims under Title I of the ADA. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (Congress's abrogation of state sovereign immunity for claims under Title I is invalid.). Moreover, multiple courts have held that sovereign immunity bars retaliation claims under Title V of the ADA if the retaliation is premised on the Title I violation. *See Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001) (Applying reasoning from *Garrett*, "Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims" that "are predicated on alleged violations of Title I."); *Morales v. New York*, 22 F. Supp. 3d 256, 269 (S.D.N.Y. 2014) (same); *Collazo-Rosado v. Univ. of Puerto Rico*, 775 F. Supp. 2d 376, 383–84 (D.P.R. 2011) (same). Accordingly, if required to decide the matter, the Court would hold in the light of these precedents that Congress did not validly abrogate sovereign immunity for Plaintiff's claims under Title I and V, meaning Plaintiff could only state a claim if Defendant waived its sovereign immunity.

[2] Plaintiff relied solely on the congressional abrogation exception to immunity but did not argue waiver. Under the party presentation principle, the Court ordinarily must "rely on the

6

The Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, which has been effective since January 1, 2004, says that "[e]xcept as provided in [select acts] and in Section 1.5 of this Act, the State of Illinois shall not be made a defendant or party in any court." Section 1.5(d) of the Act provides that:

> An employee, former employee, or prospective employee of the State who is aggrieved by any conduct or action or inaction of the State that would constitute a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*, as amended, if committed by an employer covered by that Act may bring an action under the Americans with Disabilities Act of 1990 against the State in State circuit court or federal court.

745 ILCS 5/1.5(d). Plaintiff, a current employee of the State, brings two claims in federal court under the ADA against a state official. 42 U.S.C. §§ 12112, 12203; (Dkt. 1 ¶¶ 48–80.) Illinois has thus waived its immunity for Plaintiff's ADA lawsuit under 745 ILCS 5/1.5(d). *See Evoy v. Ill. State Police*, 429 F. Supp. 2d 989, 998–99 (N.D. Ill. 2006) (Illinois waived immunity from ADA lawsuits under 745 ILCS 5/1.5(d)); *Blalock v. Ill. Dep't of Human Servs.*, 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004) (same); *Bottoms v. Ill. Dep't of Human Servs.*, 2004 WL 1403811, at *2 (N.D. Ill. June 22, 2004) (same). Plaintiff is not prevented from stating a claim because of sovereign immunity.

---

parties to frame the issues for decision." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). But the "party presentation principle is supple, not ironclad." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). For instance, the principle does not apply "when an issue or claim is properly before the court; then, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *United States v. Robl*, 8 F.4th 515, 528 n.32 (7th Cir. 2021) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). In this case, the parties have squarely presented the issue of sovereign immunity. Although the parties did not identify the waiver of sovereign immunity found under Illinois law, the law that applies here is clear. As a result, the Court is bound to decide the immunity issue in Plaintiff's favor.

### B. Discrimination

To state a claim for discrimination under the ADA, a plaintiff "must allege that he is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of his disability." *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). Defendant argues that the Complaint fails to sufficiently allege that Plaintiff was disabled within the meaning of the ADA and suffered an adverse employment action. These contentions are addressed in turn.

#### i. Disability

The Complaint alleges that "Plaintiff underwent surgery on her foot on or around April 8, 2021" and the "aforementioned surgery substantially limited one or more major life activities, i.e., walking." (Dkt. 1 ¶¶ 52–53.) These allegations are sufficient to establish that Plaintiff was "disabled within the meaning of the ADA." *Tate*, 809 F.3d at 345. Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "Walking" is a major life activity. *Id.* § 12102(2)(A). Plaintiff alleges that she had a physical impairment (foot surgery) that substantially limited a major life activity (walking); this is all that is required at the motion to dismiss stage. *See Frederic v. Northwestern Memorial Hosp.*, 2005 WL 1563136, at *7 (N.D. Ill. June 7, 2005) (Plaintiff sufficiently alleged a "disability" by claiming she had an "ankle injury" and that "she has trouble walking."); *Patterson v. Xerox Corp.*, 901 F. Supp. 274, 278 (N.D. Ill. 1995) (Plaintiff sufficiently alleged a "disability" by claiming she

8

had "severe back pain" that "limited her ability to sit at work.").

Defendant, however, argues that Plaintiff must allege a "specific disability" to state a claim under the ADA. (Dkt. 10 at 5 (citing *Tate*, 809 F.3d at 345 (A plaintiff "must allege a specific disability.")).) Put another way, Defendant says that Plaintiff must call out a specific condition in her complaint—for example, bunions—that required surgery and impaired her ability to walk. But *Tate* did not mandate such specificity. In *Tate*, the plaintiff failed to allege a "disability" because he claimed only that "Defendant was aware of my disability" and that "I was discriminated against because of my disability." *Id.* The plaintiff alleged no facts describing the nature of the disability, such as the body part or life activity that was impaired. *Id.* This lack of specificity, according to the Seventh Circuit, deprived the defendant of "fair notice" regarding the substance of the plaintiff's claim. *Id.* at 345–46.

In contrast to *Tate*, Plaintiff here provides sufficient facts to put Defendant on notice as to the nature of her disability: it was caused by her foot surgery, which limited her ability to walk. These allegations are sufficient to demonstrate that Plaintiff has plausibly alleged she was disabled.

### ii. Adverse Employment Action

Plaintiff alleges she suffered an adverse employment action when her reinstatement was delayed by over forty days, which caused "a ripple effect" resulting in a loss of payment and benefits.[3] (Dkt. 14, 4–6; Dkt. 1 ¶¶ 56, 72.) Adverse

---

[3] Defendant argues that "Plaintiff does not allege whether [the leave] was paid or unpaid medical leave." (Dkt. 10 at 4.) The Complaint, however, states that Plaintiff's return to work was delayed from July 12, 2021 until August 24, 2021, and "[b]ecause of the aforementioned conduct by Defendant, Plaintiff has suffered damages, which include . . . loss of pay and

9

employment actions "include a broad array of actions such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits.'" *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625 (7th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). This adverse "employment action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)).

Defendant contends that delaying Plaintiff's return to work (and her receipt of payment and benefits) is "not more disruptive than a mere inconvenience" and does not constitute an adverse employment action. (Dkt. 10, at 3–5.) Defendant is correct that a short delay in payment is not an adverse employment action. *See, e.g.*, *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301–02 (7th Cir. 2004) (Two-month delay in "overtime payment is an inconvenience" and does "not constitute an adverse employment action."); *Matthews v. Donahoe*, 493 F. App'x 796, 800 (7th Cir. 2012) (same).

But Defendant mischaracterizes the adverse action here as a "delay in payment." Although Plaintiff's reinstatement was delayed, that delay caused a loss of payment. Plaintiff did not merely wait an extra forty days to be paid—she entirely lost the pay she would have received if she had been allowed to work from July 12, 2021 through August 24, 2021. Forced unpaid leave causing loss of payment (as

---

benefits." (Dkt. 1 ¶¶ 63–72.) Drawing all reasonable inferences in Plaintiff's favor, the allegation that Plaintiff lost pay and benefits is sufficient to support a plausible inference that Plaintiff was not paid during the period of delay.

10

opposed to delay in payment) is an adverse employment action. *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012) ("Being forced to take an unpaid leave of absence certainly falls into" the category of adverse employment actions involving "compensation, fringe benefits, and financial terms of employment."); *Waite v. Bd. of Trs. of Univ. of Ala.*, 2018 WL 5776265, at *11 (N.D. Ala. Nov. 2, 2018) (Mandating a "further delay in Plaintiff's reinstatement from unpaid leave once she was willing and able to work in the 2015-16 fall term could be an adverse employment action."); *see also Lara-Woodcock v. United Air Lines, Inc.*, 999 F. Supp. 2d 1027, 1039 (N.D. Ill. 2013) (Forcing plaintiff on unpaid FMLA leave constitutes an adverse employment action).

Defendant further argues that there was no adverse employment action because "Plaintiff specifically states in her Complaint that she was approved to return to work on July 12, 2021, via email," but she "did not [return] until August 24, 2021." (Dkt. 10 at 5.) In other words, Defendant argues the delay was of Plaintiff's own making. Plaintiff responds that, notwithstanding the authorization to return on July 12, 2021, "the adverse employment action is the fact that her physical reinstatement was delayed by over a month." (Dkt. 14 at 5.) That is, Plaintiff was told that she was approved to return but Defendant in fact prevented her from doing so.

Drawing all reasonable inferences in Plaintiff's favor, the Court agrees with Plaintiff that the allegations in the Complaint adequately allege a delay on the part of Defendant. Although Defendant approved Plaintiff's return to work via email on July 12, 2021, the allegations plausibly show that Defendant then impeded Plaintiff's

11

return. On multiple occasions, Plaintiff attempted to clarify the status of her reinstatement, but Defendant told her that Defendant was still reviewing her medical restrictions. Defendant then requested that Plaintiff undergo an additional medical evaluation on August 11, 2021. Defendant told Plaintiff that she was cleared to return on August 24, 2021. If Plaintiff was truly cleared to return on July 12, there would have been no need later to review her medical records, conduct an additional medical evaluation, and provide a second clearance to return. These allegations, taken in the light most favorable to Plaintiff, show that Defendant plausibly caused the delay in Plaintiff's return from leave.

Accordingly, at this stage, Plaintiff's allegation that she lost pay because of Defendant's intentional delay of her return from unpaid leave is sufficient to constitute an adverse employment action.

### C. Retaliation

To state a retaliation claim under the ADA, a plaintiff must allege that "(1) she engaged in protected activity, (2) she suffered an adverse [employment] action, and (3) there was a 'but for' causal connection" between the protected activity and the adverse action. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). Defendant contends that Plaintiff has failed to allege sufficient facts establishing the latter two elements—adverse action and causation. For the reasons above, Plaintiff has alleged an adverse employment action: loss of pay from being forced unpaid leave. Defendant's motion to dismiss the retaliation claim will thus be granted only if the Complaint fails to allege "but for" causation.

12

Defendant argues that the Complaint is deficient because the only allegation supporting causation is suspicious timing: Plaintiff filed a discrimination charge with the EEOC in January 2021 and then had her reinstatement delayed beginning in July 2021. (Dkt. 10 at 7.) Plaintiff agrees (and the Court's review of the Complaint confirms) that timing is the only allegation in the Complaint that shows causation. (*See* Dkt. 14 at 9–10.) Plaintiff, however, asserts that suspicious timing is sufficient to withstand a motion to dismiss. The question is thus whether temporal proximity alone (6 months) between the EEOC complaint and the delay in reinstatement makes a causal connection between the two events plausible.

In deciding whether there is a causal connection between a plaintiff's protected activity and adverse employment action, courts "consider the evidence as a whole," including "suspicious timing." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 936–37 (7th Cir. 2022); *Mull v. Abbott Lab'ys*, 563 F. Supp. 2d 925, 931 (N.D. Ill. 2008) ("Suspicious timing is one possible means of establishing such a causal connection."). Defendant relies on Seventh Circuit cases holding that suspicious timing, by itself, is "rarely enough" to establish causation. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (Suspicious timing is sufficient on summary judgment only "in an extreme case . . . where the adverse impact comes on the heels of the protected activity.") (cleaned up); *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (To infer causation from suspicious timing on summary judgment, "we typically allow no more than a few days to elapse between the protected activity and adverse action.").

13

All the cases cited by Defendant were decided at the summary judgment stage. *See, e.g.*, *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 390 (7th Cir. 2012); *Hoppe v. Lewis Univ.*, 692 F.3d 833, 842 (7th Cir. 2012); *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Casna*, 574 F.3d at 427. Summary judgment, unlike a motion to dismiss, requires more than plausibility: it is the "put up or shut up" moment when the plaintiff must show what evidence exists to prove its claim. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Without "having the benefit of discovery, retaliation plaintiffs often can suffuse their claims with nothing more than allegations of suspicious timing," but this "does not render them implausible." *Tuhey v. Ill. Tool Works, Inc.*, 2017 WL 3278941, at *5 (N.D. Ill. Aug. 2, 2017). That is why the Seventh Circuit has cautioned district courts against applying its summary judgment causation holdings when ruling on motions to dismiss. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828–29 (reversing district court that dismissed retaliation claim based "on a summary judgment case" addressing suspicious timing); *see also Am. Civ. Lib. Union of Ill. v. City of Chicago*, 2011 WL 4498959, at *3 (N.D. Ill. Sept. 23, 2011) (A "holding about what it is reasonable to infer from the lack of certain evidence on summary judgment has little bearing on what reasonable inferences can be made from allegations in a complaint.").

Courts therefore often deny motions to dismiss where the plaintiff alleges protected activity that is followed by an adverse employment action. *See, e.g.*, *C.B. v. Bd. of Educ. of City of Chicago, Dist. 299*, 2022 WL 3700752, at *17 (N.D. Ill. Aug. 26, 2022) (Plaintiffs "have done enough at the pleading stage with respect to causation"

14

by asserting "suspicious timing."); *Tuhey*, 2017 WL 3278941, at *4 (Protected activity that "occurred in May 2015" was "sufficiently close to when [plaintiff] was reviewed unfavorably in October 2015."); *Am. Civ. Lib. Union*, 2011 WL 4498959, at *3 (declining to dismiss retaliation claim where only allegation supporting causation was suspicious timing).

Retaliation claims may still be dismissed if a sufficiently "lengthy time period between the protected activity and the alleged retaliation [] make[s] any causal connection between the two impossible." *Carlson*, 758 F.3d at 828. In other words, the temporal proximity required at the pleading stage is significantly relaxed, but it cannot be so remote that causation becomes implausible. For example, one judge in this District has held that nine-months between the protected activity and retaliatory act is too remote to state a claim without additional allegations. *See Wheeler v. Piazza*, 2018 WL 835353, at *4 (N.D. Ill. Feb. 13, 2018). But in general, the dismissal of retaliation claims at the pleading stage is typically premised on at least a one-year gap between the protected activity and adverse action. *See, e.g., Brownlee v. Catholic Charities of the Archdiocese of Chicago*, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) (30 months); *Schlessinger v. Chicago Housing Auth.*, 2012 WL 5520848, at *8 (N.D. Ill. Nov. 13, 2012) (two years); *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (13 months).[4]

---

[4] "The retaliatory provisions of the [] principal federal employment discrimination statutes," including those covering disability, race, sex, age, rehabilitation, and First Amendment, "are materially identical." *Twisdale v. Snow*, 325 F.3d 950, 952 (7th Cir. 2003). Accordingly, the Court may properly look to retaliation decisions involving any of these statutes for guidance. *See Casna*, 574 F.3d at 427.

15

At this stage, the Court cannot say that Plaintiff's retaliation claim is implausible. Plaintiff filed an EEOC charge in January 2021 claiming disability discrimination, which provided Defendant with a potential motive for retaliation. When Plaintiff tried to return from disability leave in July 2021, Defendant gave her the run-around by repeatedly moving the goal posts: her medical restrictions were approved but then reevaluated; her emails and calls went largely unanswered; and then she had to undergo a second physical examination to confirm she could work without restrictions. Defendant's allegedly dilatory actions commenced six months after Plaintiff complained to the EEOC. Although six months' proximity, standing alone, approaches the outer bounds of plausibility, it is not so remote to make the causal connection "impossible." *Carlson*, 758 F.3d at 828. Defendant's motion to dismiss Plaintiff's retaliation claim is therefore denied.

### IV. CONCLUSION

Defendant's motion to dismiss (Dkt. 10) is denied.

SO ORDERED in No. 22-cv-00373.

Date: May 17, 2023

JOHN F. KNESS
United States District Judge

16